## State v. Sharp
*[Cite as 8 AOA 716]*

*Case No. CA90-03-022*
*Clermont County, (12th)*
*Decided November 26, 1990*

*Donald W. White, Clermont County Prosecuting Attorney, David H. Hoffmann, 123 N. Third Street, Batavia, Ohio 45103, for Plaintiff-Appellee.*

*R. Daniel Hannon, Clermont County Public Defender, Gregory Chapman, 10 S. Third Street, Batavia, Ohio 45103, for Defendant-Appellant.*

KOEHLER, J.

Defendant-appellant, David Wayne Sharp, appeals the trial court's modification of his original sentence. The trial court revoked appellant's probation and increased his sentence because of appellant's alleged violations of probation conditions.

On January 22, 1987, appellant pleaded guilty to two reduced counts of burglary, a violation of R.C. 2911.12. The trial court imposed concurrent sentences of not less than three nor more than fifteen years of incarceration on each count. On March 6, 1987, appellant was transported to the Chillicothe Correctional Institution to begin his term of imprisonment.

Pursuant to R.C. 2947.061, a motion for shock probation was filed on behalf of appellant. By entry dated October 20, 1987, the motion was granted, suspending the balance

of the sentence of incarceration and placing appellant on probation for a period of five years.

A hearing held on July 28, 1989 determined that appellant had violated the terms of his probation. The trial court continued appellant on shock probation, but added to the conditions of his probation a requirement for weekly personal appearances at the probation office.

On September 18, 1989, allegations that appellant had failed to report to his probation officer were filed. These allegations were later supplemented on January 9, 1990 with claims that appellant had been convicted of one count of forgery and two counts of burglary in a subsequent incident.

A hearing held on January 29, 1990 resulted in the revocation of appellant's probation. The trial court reimposed appellant's sentence and enhanced the penalty to four to fifteen years on each count, and further ordered that the sentences run consecutively.

Appellant has brought this timely appeal and assigns as error the following:

"The trial court erred to the substantial prejudice of the Appellant by enhancing his sentence upon the revocation of his probation thus violating Appellant's right against double jeopardy."

Appellant contends that since the execution of his sentence had commenced, the trial court lacked authority to modify and increase his original sentence.

R.C. 2929.51(A) provides that, at or after the time of sentencing for a felony up to the time the defendant is delivered to the institution where he is to serve his sentence, the court may suspend the sentence and place the defendant on probation pursuant to R.C. 2951.02. Once the defendant is in the custody of the institution where he is to serve his sentence, R.C. 2947.061 permits the defendant to make a motion for probation requesting suspension of his sentence at any time after serving six months in the custody of the department of rehabilitation and correction. If defendant's motion is granted, R.C. 2929.51(B) provides that the court may suspend the balance of defendant's sentence and place the defendant on probation.

We have found four separate Ohio courts of appeals that have held that once a defendant has been given a legal sentence and has served a portion of that sentence in a state correctional facility, and thereafter the remainder of the sentence is suspended and defendant is granted shock probation, the trial court may not impose a greater sentence upon revocation of the shock probation. *State, ex rel. Freeman, v. Dept. of Rehabilitation & Correction* (1982), 10 Ohio App. 3d 172; *State v. Ramey* (June 2, 1982), Richland App. No. CA-2032, unreported; *State v. Seiler* (Dec. 30, 1988), Lucas App. No. L-88-029, unreported; and *Columbus v. Messer* (1982), 7 Ohio App. 3d 266.

The aforementioned cases are in agreement with other state courts of appeals. Our research has found several states that have refused to increase the severity of a sentence, once defendant has served any part of the initial sentence. See *Daniels v. State* (1988), 188 Ga. App. 873, 374 S.E. 2d 805; *Daniels v. State* (Fla. 1987), 513 So. 2d 244; *State v. Capeman* (N.J. 1984), 484 A. 2d 1250; and *State v. Garcia* (1983), 99 N.M. App. 466, 659 P. 2d 918.

Moreover, the United States Supreme Court has hinted that it is inclined to follow the federal courts' practice of not permitting the sentencing judge to increase the penalty of the defendant, when the defendant has already begun to serve his sentence. *U.S. v. DiFrancesco* (1980), 449 U.S. 117, 134, 101 S.Ct. 426, 436.

The state argues that our decision in *State v. Draper* (Dec. 14, 1989), Clermont App. No. CA89-05-034, unreported, certiorari denied (1990), 59 U.S.L.W. 3294, disposes of the instant action. The state also relies on *State v. McMullen* (1983), 6 Ohio St. 3d 244. *McMullen* stands for the proposition that a judge may "impose a longer sentence after revocation of a defendant's probation *** without violating the defendant's constitutional rights against double jeopardy." *Id.* at 246. In *Draper,* we read *McMullen's* hypothesis to apply not only to situations where the defendant has not served any of his original sentence, but also to those situations where the defendant has served a portion of his sentence.

Although *Draper* was decided just last year, it is now our judgment that Judge Jones' dissent in *Draper* is the better law. We understand that much criticism will be directed toward this court for our change in opinion. We believe, however, that it is of greater importance for a court to admit that

an error in judgment has been made, than to wait to see the impact that the mistake has on the legal and public community. Therefore, we hold *McMullen* to apply only in those situations where a defendant has not served any of his original sentence.

This court's change in opinion is founded on our determination that once the execution of a sentence is commenced, an "increase in the penalty [would] subject the defendant to double punishment for the same offense." *United States v. Benz* (1931), 282 U.S. 304, 307, 51 S.Ct. 113, 114. The execution of a sentence is commenced "when the defendant is delivered from the temporary detention facility of the judicial branch to the penal institution of the executive branch." *Messer, supra,* at 268; and *State v. Addison* (1987), 40 Ohio App. 3d 7, 9.

In the case at bar, appellant was originally given a sentence of not less than three nor more than fifteen years incarceration on each count. These counts were to run concurrently. Appellant had served nearly eight months of his sentence at the Chillicothe Correctional Institution when the trial court granted his motion for shock probation. The trial court revoked appellant's probation and modified his sentence for alleged violations of probation conditions. The modification imposed by the court enhanced appellant's sentence to four to fifteen years on each count, with each count running consecutively.

In *Addison,* the court held that "[o]nce a sentence has been executed, the trial court no longer has the power to modify the sentence except as provided by legislation." *Id.* at 9. Following *Addison,* we find nothing in Ohio law to permit a court to increase or decrease a sentence once a defendant has been delivered to the state penal institution. Appellant's assignment of error is therefore sustained.

Although the trial court's utilization of *Draper* in the instant action was correct, today's decision nullifies its authority. The modification of appellant's sentence is reversed and the trial court is ordered to reinstate the original sentence.

*Judgment reversed and remanded.*

JONES, P.J., concurs.

YOUNG, J., dissents.

YOUNG, J., dissenting.

In its opinion, the majority alludes to the "error" made by this court in *State v. Draper* (Dec. 14, 1989), Clermont App. No. CA89-05-034, unreported. The only difference between *Draper* and the case *sub judice* is the makeup of the panel hearing the appeal. What happens next week when the *Draper* panel hears a similar case? Do we then admit that an error in judgment was made in this case? The possibilities are endless and mind boggling. *Draper* should be precedent in the Twelfth District until overturned by a higher tribunal. I sympathize with the prosecutors and defense counsel who must try to work their way through the maze we have created.

I dissent.